IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTONIO MARQUEZ : 
 : CIVIL ACTION
    v. : 
 : NO. 14-1284
CITY OF PHILADELPHIA, ET AL. : 

### MEMORANDUM

**SURRICK, J.**                                      **SEPTEMBER  1 , 2015**

Presently before the Court is the Motion for Summary Judgment filed by Defendants

Police Officer Eric Burke, Police Officer Phillip Scratchard, Sergeant Robert Hennessey, Bruce

Herdman and the City of Philadelphia (Defs.' Mot. Summ. J., ECF No. 19); and the Motion for

Summary Judgment on Behalf of Defendant Corizon Health, Inc., t/a Prison Health Services, Inc.

(Corizon Mot. Summ. J., ECF No. 20).  For the following reasons, the Defendants' Motions will

be granted.

## I.    BACKGROUND

Plaintiff Antonio Marquez brings this action under 42 U.S.C. § 1983 and Pennsylvania

law, alleging that he was falsely arrested and prosecuted for driving under the influence of

alcohol ("DUI"), and that he was not provided adequate medical care while in the custody of the

Philadelphia prison system.  Defendants include Police Officer Eric Burke, Sergeant Robert

Hennessey, Police Officer Phillip Scratchard, Bruce Herdman, the City of Philadelphia, and

Corizon Health Inc., t/a Prison Health Services, Inc. ("Corizon").  Defendants seek summary

judgment on all claims in the Amended Complaint.

A.      **Factual Background**[1]

In the early evening of February 28, 2012, Plaintiff was involved in a car accident with a vehicle driven by Raymond Reyes.  (Marquez Aff. ¶ 1, Pl.'s Resp. Ex. A, ECF No. 25.)[2] Plaintiff was driving north on Front Street in Philadelphia when he was side-swiped by Reyes's vehicle, which crossed the double line and into Plaintiff's lane.  (Marquez Dep. 24-25, Defs.' Mot. Summ. J. Ex. B.)[3]  Reyes got out of his vehicle, walked towards Plaintiff's vehicle, and took Plaintiff's keys out of the ignition.  (Marquez Dep. 26, 28.)  The police arrived within five to ten minutes.  (*Id*. at 27.)  Officer Burke was the first to arrive at the scene.  (Burke Dep. 18-20.)  At the accident scene, Burke saw that Plaintiff's car was in the middle of the street, taking up two lanes.  (*Id*. at 30.)

When Officer Burke arrived, he was approached by Reyes, who stated that Plaintiff struck his vehicle.  (Burke Dep. 21.)  Reyes also told Officer Burke that because Plaintiff was trying to leave the scene of the accident, Reyes removed Plaintiff's keys from the ignition of his car.  (*Id*. at 20-21.)  Reyes told Officer Burke that he believed that Plaintiff was intoxicated.  (*Id*. at 27 (testifying that Reyes "kept on saying, 'he's drunk, he's drunk, he's drunk'").)  Officer Burke then spoke to Plaintiff, who confirmed that he had just been in a car accident.  (Marquez Dep. 30.)  Officer Burke noticed that Plaintiff was slurring his words.  (Burke Dep. 25.)  At Officer Burke's request, Plaintiff went to retrieve paperwork from his car.  (Marquez Dep. 30;

---

[1] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party.  *P.N. v. Clementon Bd. of Educ*., 442 F.3d 848, 852 (3d Cir. 2006).

[2] Plaintiff's exhibits are located at ECF No. 27.

[3] The parties dispute whether the accident was caused by Plaintiff or Reyes.  Reyes reported to Officer Burke that Plaintiff crossed the double line into Reyes's lane and struck Reyes's vehicle.  (Burke Dep. 21, Defs.' Mot. Summ. J. Ex. A.)  Plaintiff reported that it was Reyes who caused the accident.

Burke Dep. 23.)  Officer Burke noticed that Plaintiff was "stumbling and staggering" towards his car, and that his balance was off.  (Burke Dep. 23-24.)  Officer Burke witnessed Plaintiff lose balance and fall into his car when he attempted to retrieve paperwork from the glove compartment.  (*Id*. at 24.)  Plaintiff dropped the paperwork on the ground, and had a "very hard time" picking it up.  (*Id*.)  Officer Burke stated that Plaintiff's motor skills were off.  (*Id*.)

Plaintiff claims that, as a result of a stroke, he suffers from Bell's palsy, which causes him to slur his speech.  (Marquez Aff. ¶ 5; Marquez Dep. 30.)  Plaintiff states that he informed Officer Burke about this.  (Marquez Dep. 30 ("So I told him—he said, why are you slurring?  I said, I have Bell's palsy from my stroke.").)  Plaintiff also claims that he told Officer Burke that he uses a cane and walks with a limp, both as a result of a previous back surgery.  (Marquez Aff. ¶ 5.)[4]  Burke asked Plaintiff whether he had been drinking that day, and Plaintiff responded that he had not.  (Burke Dep. 43; Marquez Aff. ¶ 3.)  Officer Burke did not smell any alcohol on Plaintiff's breath.  (Burke Dep. 70.)

Officer Burke then contacted his supervisor, Defendant Sergeant Hennessey, and asked him to come to the scene.  (*Id*. at 39-40.)  When Sergeant Hennessey arrived, Officer Burke told him what had happened, and that Reyes believed Plaintiff was intoxicated.  (*Id*. at 42.)  Sergeant Hennessey then spoke to Plaintiff, and asked Plaintiff if he had been drinking.  (Marquez Dep. 31.)  Sergeant Hennessey states that Plaintiff admitted to drinking alcohol that day (Hennessey Dep. 8, Defs.' Mot. Summ. J. Ex. C.)  Plaintiff states that he denied drinking any alcohol to

---

[4] Officer Burke testified that Plaintiff never mentioned suffering from a stroke, having Bell's palsy, or requiring a cane to walk.  (Burke Dep. 26.)  Officer Burke also stated that Plaintiff never explained that his slurred speech and difficulties with walking were related to a prior back surgery or other disabilities.  (*Id*.)

Sergeant Hennessey (Marquez Dep. 51.)[5]

After speaking with Plaintiff, Sergeant Hennessey told Officer Burke that Plaintiff admitted to drinking alcohol earlier that day.  (Burke Dep. 43; Hennessey Dep. 9.)  Burke arrested Plaintiff for DUI.  (Burke Dep. 43.)[6]  Plaintiff was at all times compliant, and did not resist the arrest.  (Burke Dep. 48.)  Plaintiff was transported to the Police Detention Unit ("PDU"), which is also known as the "Roundhouse."  (*Id*. at 49-50.)

Officer Burke prepared the police report for Plaintiff's arrest.  (*Id*. at 55.)  The police report stated that Plaintiff was involved in an auto accident, had poor balance when walking, admitted that he had been drinking earlier, and attempted to leave the scene of the accident.  (*Id*.)  The police report has a notation indicating that it was prepared by Officer Phillip Scratchard, who, according to Officer Burke, was not at all involved in the arrest of Plaintiff.  (*Id*. at 58-59.)  Officer Burke used Officer Scratchard's username and password to sign on to the system to complete Plaintiff's police report.  (*Id*. at 59.)  Officer Burke's password was not working on the day he needed to complete the report.  (*Id*.)

At the Roundhouse, Plaintiff underwent a blood alcohol test (Marquez Dep. 99), which revealed a blood alcohol content ("BAC") of 0.178%.  (Mar. 12, 2012 Drugscan Report, Defs.' Mot. Summ. J. Ex. D.)  The legal limit in Pennsylvania is 0.08%.  *See* 75 Pa. Cons. Stat. Ann. § 3802(a).  The Drugscan Report, which was prepared by a forensic psychologist, states that

> it is reasonably certain that at and around a 0.178% blood alcohol concentration, this individual's alertness, sense of care and caution, perception, judgment,

---

[5] Hennessey also stated that he did not smell any alcohol on Plaintiff's breath, but that Plaintiff "seemed a little unstable."  (Hennessey Dep. 8.)

[6] Plaintiff testified that Sergeant Hennessey directed Officer Burke to arrest Plaintiff. (Marquez Dep. 31.)  Officer Burke testified that he made the decision to arrest Plaintiff, and that Sergeant Hennessey did not order the arrest.  (Burke Dep. 44-45.)  Sergeant Hennessey also testified that he did not direct Officer Burke to arrest Plaintiff.  (Hennessey Dep. 8.)

response time and coordination were markedly impaired by alcohol; and this individual was unfit to operate a motor vehicle safely on the highway.

(Drugscan Report 2.)  The Drugscan Report also states that, for an individual with Plaintiff's weight, a 0.178% BAC "is equivalent to approximately 8 alcoholic 'drinks.'"  (*Id*. at 1.)[7]

At the Roundhouse, Plaintiff informed police personnel that he needed his medications. (Marquez Dep. 35-36, 39-40; Marquez Aff. ¶ 11.)  Plaintiff states that he specifically informed a nurse at the Roundhouse that he takes medications for high blood pressure, pain, hypertension, diabetes, and mental health issues such as schizophrenia and depression.  (Marquez Dep. 35-39; *see also* Marquez Aff. ¶ 12.)  No medications were provided to Plaintiff.  (Marquez Dep. 35-36, 39-40; Marquez Aff. ¶ 11.)  Plaintiff also requested to make a phone call, but the request was denied.  (Marquez Dep. 40.)

On the following day, March 1, 2012, Plaintiff was transferred from the Roundhouse to the Philadelphia prison, Curran Fromhold Correctional Facility ("CFCF").  (Marquez Dep. 35, 44.)  At CFCF, Plaintiff "again informed the personnel, including an intake nurse, of [his] disabilities and [his] need for medications."  (Marquez Aff. ¶ 14.)[8]  The Confidential Medical Screening Form indicates that Plaintiff was initially screened at CFCF by Nurse Erkand Batti, R.N.  (Medical Screening Form, Pl.'s Resp. Ex. D.)  Nurse Batti is an employee of Corizon. (Deer Cert. ¶ 4, Corizon Mot. Summ. J. Ex. D.)[9]  When an intake screening occurs, the nurse

---

[7] Plaintiff makes no mention of the DrugScan Report in his Response to the Summary Judgment Motions.

[8] Plaintiff's deposition testimony contradicts his affidavit.  At his deposition, Plaintiff stated that he did not see a nurse at CFCF, and only saw one once he arrived at the Detention Center.  (Marquez Dep. 41.)

[9] "Deer Cert" refers to the Certification of Latasha Deer, R.N.  At the time of Plaintiff's incarceration, Nurse Deer was employed by Corizon as the Assistant Health Services Administrator at CFCF.  (Deer Cert ¶ 3.)  Nurse Deer's Certification describes the inmate intake

asks the inmate questions, and enters answers in the Prison's computer program called Lock & Track.  (Herdman Dep. 50-61, Defs.' Mot. Summ. J. Ex. E.)  The Confidential Medical Screening Form for Plaintiff contains answers indicating that Plaintiff was suicidal, and had attempted suicide in the last month.  (Medical Screening Form 4 (stating that inmate "says he has suicidal ideations right now," and that he attempted suicide "many times before").)  Plaintiff denies that he was ever suicidal, and denies ever telling anyone at CFCF that he had suicidal ideations.  (Marquez Dep. 47; Marquez Aff. ¶ 19.)  The Confidential Medical Screening Form also indicates that Plaintiff's blood sugar reading was taken and was in the normal range.  (Deer Cert. ¶ 8.)  Plaintiff informed Nurse Batti that he took an oral medication for diabetes.  (Medical Screening Form 3.)  This is the only medication listed on the Form.  (*Id*.)[10]  The Confidential Medical Screening Form contains the signatures of Plaintiff and Nurse Batti.  (*Id*. at 6.)

On the following day, March 2, 2012, Plaintiff was transferred from CFCF to the Mental Health Unit of the Detention Center.  (Marquez Dep. 45.)  There he was placed in a suicide cell.  (*Id*. at 47; Marquez Aff. ¶ 17.)  When Plaintiff was transferred to the Mental Health Unit, he was under the care and control of Mental Health Management Inc. ("MHM"), and not Corizon.

---

process at CFCF, including emergency mental health referrals for inmates, and the transfer of inmates from CFCF to the Mental Health Unit of the Detention Center.  (*Id*. ¶ 4.)

[10] Nurse Deer states in her Affidavit that

At that time, according to the Confidential Medical Screening Form, the only medication that Mr. Marquez reported to Nurse Batti, was Metformin for diabetes, and based upon my education and experience as a Registered Nurse, and given Mr. Marquez's blood sugar reading of 101, the Metformin was not a medication that had to be given at that time, given the more pressing mental health problem with the patient stating that he was thinking of killing himself.

(Deer Cert. ¶ 10.)

(Deer Cert. ¶ 4.)[11]  By indicating that he was suicidal to Nurse Batti, "the computer system automatically creates an EMERGENCY mental health referral for the inmate . . . to be seen by the mental health staff employed by MHM."  (Deer Cert. ¶ 9.)

On March 2, 2012, the same day that he was transferred to the Mental Health Unit, Plaintiff complained about tightness in his chest and tingling in his hands.  (Marquez Dep. 51, 67.)  A nurse visited Plaintiff in his cell, and Plaintiff told her that he thought he was having a stroke.  (*Id*. at 65.)  Plaintiff states that the nurse gave him nitroglycerin, which caused Plaintiff to become "semi-unconscious."  (*Id*. at 49, 67.)[12]  Plaintiff was taken from his cell to the Medical Infirmary at the Detention Center, where he was examined by Dr. Paula Patton, a Corizon employee.  (Deer Cert. ¶ 14; Emergency Dept. Referral Form.)[13]  Plaintiff was therefore sent to ARIA Hospital by ambulance at 1:20 p.m.  (Emergency Dept. Referral Form.)  Plaintiff spent six days at ARIA Hospital, where his blood pressure was monitored.  (Marquez Dep. 54.)  Plaintiff did not have a stroke.  (*Id*. at 53.)  Plaintiff states that, during his stay at ARIA, his blood pressure was "fine."  (*Id*. at 54-55, 88.)  Plaintiff did not recall ever receiving a diagnosis from

---

[11] MHM is another medical provider contracted to provide health services to the Philadelphia Prison System.  (Herdman Dep. 14.)  Corizon provides physical health care to the inmates, and MHM provides mental health care to the inmates.  (*Id*.)  When an inmate is placed in the care of MHM, a health care provider from Corizon will still visit the inmate daily to evaluate for medical issues such as non-psychiatric medications.  (Deer Cert. ¶ 13.)

[12] There is no notation in any of the prison records indicating that Plaintiff was provided nitroglycerin.  In addition, neither the Emergency Department Referral Form nor the one-page printout of the ARIA Health emergency department record indicates that Plaintiff had been provided nitroglycerin.  (Emergency Dept. Referral Form, Deer Cert. Ex. 5; ARIA Hosp. Emergency Record, Corizon Mot. Summ. J. Ex. I.)  Plaintiff's Affidavit also makes no mention of being given nitroglycerin.  (Marquez Aff.)  Instead, Plaintiff simply states that he was not provided any of his requested medications.  (*Id*.)

[13] Dr. Patton stated on the Emergency Department Referral Form that two hospitals were contacted to verify Plaintiff's medical history, and neither hospital could verify Plaintiff's history of stroke or cardiac issues.  (Emerg. Dept. Referral Form.)

the doctors at ARIA.  (*Id*. at 55.)

He was released from ARIA on March 8, 2012, and transferred back to the Detention Center.  (*Id*.)  He was released from the Detention Center on the following day, March 9, 2012. (*Id*. at 56.)  On March 12, 2012, Plaintiff went to Nazareth Hospital where he was treated for bacterial pneumonia, and provided antibiotics.  (*Id*. at 68, 91.)

On April 17, 2013, a preliminary hearing was held on Plaintiff's DUI charges.  (Burke Dep. 67.)  Officer Burke testified at the hearing.  (*Id*.)  The charges against Plaintiff were ultimately dismissed.  (*Id*.; Marquez Aff. ¶ 24.)

### B.    Procedural History

Plaintiff filed an Amended Complaint on August 22, 2014.  (ECF No. 13.)  The Amended Complaint contains two counts.  Count I alleges constitutional claims under Section 1983 and state law claims against Officer Burke, Officer Scratchard, Sergeant Hennessey, and the City of Philadelphia.  (Am. Compl. ¶¶ 60-66.)  Count II alleges a Section 1983 claim for failure to provide adequate medical care against Herdman and Corizon.

On April 2, 2015, Defendants Burke, Scratchard, Hennessey, Herdman, and the City of Philadelphia filed a Motion for Summary Judgment.  (Defs.' Mot. Summ. J.)  On April 3, 2015, Defendant Corizon filed a Motion for Summary Judgment.  (Corizon Mot. Summ. J., ECF No. 21.)[14]  On May 5, 2015, Plaintiff filed a Response to the Prison Defendants' Motion for Summary Judgment (Pl.'s Resp., ECF No. 25), and a Response to Corizon's Motion for Summary Judgment (Pl.'s Corizon Resp., ECF No. 26).  Plaintiff also filed an Appendix of Exhibits in support of its Response to both Motions for Summary Judgment.  (ECF No. 27.)

---

[14] Defendants filed certain exhibits under seal.  (*See* ECF Nos. 22, 24.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law."  *Id*.  The court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment.  *Schaar v. Lehigh Valley Health Servs., Inc*., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co*., 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co.*, *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III.   DISCUSSION

Defendants seek dismissal of all claims asserted against them.  Defendants Burke, Hennessey, Scratchard, and the City of Philadelphia seek dismissal of all claims asserted in Count I.  This includes claims asserted under Section 1983 (false arrest, false imprisonment, malicious prosecution, and abuse of process), and claims asserted under Pennsylvania law (false light, invasion of privacy, false arrest, false imprisonment, and malicious prosecution). Defendants Herdman and Corizon seek dismissal of Plaintiff's claim in Count II for failure to provide medical care.

As an initial matter, we note that Plaintiff has failed to address many of Defendants' arguments.  Specifically, Plaintiff does not respond to Scratchard's arguments in support of dismissal of the claims asserted against him.  Plaintiff similarly does not respond to Herdman's arguments in support of dismissal of the claims asserted against him.  We presume that Plaintiff has abandoned his claims against these Defendants.  Accordingly, summary judgment will be granted in favor of Defendants Scratchard and Herdman.[15]

---

[15] In any event, it appears from the record that summary judgment would nevertheless be appropriate against Defendants Scratchard and Herdman.  It is well-settled that "[l]iability under section 1983 cannot be imposed absent personal involvement in the alleged actions" by the defendant.  *Surine v. Edgcomb*, 479 F. App'x 405, 407 (3d Cir. 2012) (affirming grant of summary judgment to police chief because he had no personal involvement in the arrest or prosecution of the plaintiff).  The record reflects that Officer Scratchard had no involvement in Plaintiff's arrest or subsequent prosecution for DUI.  Officer Burke testified that Scratchard was not present during the arrest of Plaintiff.  (Burke Dep. 58.)  When Burke completed the arrest report, he used Officer Scratchard's username and password to sign into the system because Burke's password was not working.  (*Id*. at 59.)  Plaintiff has not alleged any other facts involving Officer Scratchard.  Summary judgment is therefore appropriate in favor of Officer Scratchard on all claims.

Plaintiff also fails to address any of Defendants' arguments with respect to the abuse of process claim asserted under Section 1983, and the false light and invasion of privacy claims asserted under state law.  The Court presumes that Plaintiff has also abandoned these claims.[16] We will therefore grant summary judgment as to these claims.

We will address the remainder of Defendants' arguments in support of summary judgment.

### A.    False Arrest and False Imprisonment Claims against Officer Burke and Sergeant Hennessey

Officer Burke and Sergeant Hennessey seek summary judgment on Plaintiff's false arrest and false imprisonment claims.  Defendants argue that these claims fail because the police

---

Similarly, Bruce Herdman had no involvement in the medical care provided to Plaintiff. Herdman is the Chief of Medical Operations for the Philadelphia Mental Health Care Corporation.  (Herdman Dep. 4, 6.)  Herdman is not a medical doctor, but instead a healthcare administrator.  (*Id.*)  He never met Plaintiff, and was in no way responsible for providing healthcare to Plaintiff during the time he was detained in relation to his DUI arrest.  (*Id.* at 87.)

[16] Based on the evidence contained in the summary judgment record, these claims also fail on their merits.  A claim for abuse of process under Section 1983 "lies where the prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (internal quotation marks omitted).  Claims for abuse of process concern the "perversion of process after litigation has begun."  *Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014) (internal quotation marks omitted) (affirming dismissal of abuse of process claim where the plaintiff only alleged that she was wrongfully arrested).  Plaintiff has not alleged, let alone demonstrated with factual support, that his DUI prosecution was pursued for any ulterior purpose.

Plaintiff's state law claims for invasion of privacy and false light also fail on their merits. These claims are precluded under Pennsylvania's Political Subdivision Tort Claims Act (PSTCA).  *See* 42 Pa. Const. Stat. § 8541 (providing absolute immunity to local agencies and their employees for official actions, excluding eight statutorily defined exceptions).  Local agencies and their employees, such as the police officers here, are granted immunity for the intentional torts of invasion of privacy and false light.  *See Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 636 (E.D. Pa. 2006) (concluding that the defendant is immune under the PSTCA from the plaintiff's claim of invasion of privacy by false light); *Martin v. City of Reading*, No. 12-3665, 2015 U.S. Dist. LEXIS 100122, at *68-69 (E.D. Pa. July 31, 2015) (concluding that the plaintiff's false light claim is barred by the PSTCA).  Accordingly, even if Plaintiff had not abandoned these claims, summary judgment would be appropriate.

11

officers had probable cause to arrest Plaintiff for DUI.

To establish a claim for false arrest or false imprisonment, Plaintiff must show that the arrest or detention occurred without the existence of probable cause. *Murphy v. Bendig*, 232 F. App'x 150, 153 (3d Cir. 2007). False arrest and false imprisonment claims are essentially the same, except that false arrest requires a showing of arrest and false imprisonment requires a showing of detention. *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999). Both claims require a plaintiff to prove that the arresting officer lacked probable cause. *Sheedy v. City of Philadelphia*, 184 F. App'x 282, 284 (3d Cir. 2006). Because it is not disputed that Plaintiff was arrested and detained during the incident in question, our analysis will focus on whether the police officers had probable cause for the arrest and detention.

Probable cause is found "where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (noting that probable cause to arrest exists "if at the moment the arrest was made the facts and circumstances within the officers' knowledge . . . were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense" (internal quotations and citations omitted)). Whether the arrest was constitutional does not depend on whether the suspect was ultimately charged with the crime or acquitted of the charges. *Wright*, 409 F.3d at 602. Generally, the existence of probable cause is an issue reserved for the jury, particularly in cases when the probable cause determination rests on credibility conflicts. *Merkle*

12

*v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).  "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly."  *Id.* at 788-89 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Viewing the facts in the light most favorable to Plaintiff, we are satisfied that Plaintiff's constitutional rights were not violated.  Officer Burke's decision to arrest Plaintiff for driving under the influence of alcohol was based on many factors.  Plaintiff had been in an accident with another vehicle.  The driver of the other vehicle, Raymond Reyes, told Officer Burke that Plaintiff crossed into his lane and struck his vehicle, a claim which Plaintiff denies.  Reyes also told Officer Burke that Plaintiff was intoxicated, and that he tried to flee the accident scene. Officer Burke observed Plaintiff slurring his speech, stumbling and staggering, unable to pick up paperwork off of the ground, and falling into his car as a result of unstable balance.  Officer Burke also was told by Sergeant Hennessey that Plaintiff admitted to drinking alcohol that day. Given the totality of the circumstances, we are satisfied that Officer Burke had probable cause to arrest Plaintiff for DUI.  *See Commonwealth v. Semuta*, 902 A.2d 1254, 1260 (Pa. Super. Ct. 2006) ("In determining whether probable cause to make an arrest exists in a given situation, this Court will consider the totality of the circumstances presented to the police officer and not concentrate on each, individual element.").[17]  It is interesting to note that Officer Burke's

---

[17] Plaintiff argues that the Court may not consider statements made by Reyes or Sergeant Hennessey because they constitute inadmissible hearsay.  In the Third Circuit, "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."  *Shelton v. Univ. of Med. & Denistry*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). Generally, police reports are admissible under the "public records" exception to the hearsay rule. *See* Fed. R. Evid. 803(8); *Rotenberg v. Lake Charter Bus Corp.*, No. 12-2155, 2014 U.S. Dist. LEXIS 9082, at *20 n.8 (D.N.J. Jan. 24, 2014) (citing *United States v. Versaint*, 849 F.2d 827,

decision to arrest Plaintiff proved to be a proper decision.  Plaintiff's BAC was well above the legal limit.

In addition, although Sergeant Hennessey was not involved in the actual arrest of Plaintiff, the existence of probable cause extends to claims against Sergeant Hennessey.  *See United States v. Doss*, No. 12-326, 2014 U.S. Dist. LEXIS 116404, at *9 (M.D. Pa. Aug. 21, 2014) ("When Fourth Amendment challenges arise out of joint investigative endeavors, courts employ the 'collective knowledge doctrine,' under which the knowledge of one law enforcement officer may be imputed to another."); *see also United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979) (applying the collective knowledge doctrine when analyzing whether officers possessed sufficient probable cause for an arrest).

Plaintiff argues that probable cause was lacking because he explained to Officer Burke that his slurred speech and imbalance were the result of a stroke and back surgery, and not intoxication.  Officer Burke disputes that Plaintiff provided this explanation.  However, even if Plaintiff had, probable cause was still present.  Officer Burke did not have to believe Plaintiff's explanation.  "A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."  *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).  Officer Burke decided to arrest Plaintiff based on his observations of Plaintiff, the information he received from Reyes, and the facts and circumstances surrounding the accident.  Officer Burke's decision was reasonable under the

831 & n.9 (3d Cir. 1988)).  Officer Burke, Sergeant Hennessey, and Raymond Reyes could testify at trial regarding their personal knowledge about the accident and arrest.  As a result, we may consider the police report, including the statements contained therein, for purposes of these summary judgment motions.  *See Clark v. Clabaugh*, 20 F.3d 1290, 1294 (3d Cir. 1994) (holding that the district court did not err in considering a police report, which contained opinion based on hearsay statements, in ruling on summary judgment motion).

circumstances.

### B.     Malicious Prosecution Claims

Defendants Burke and Hennessey also move for summary judgment on Plaintiff's

malicious prosecution claim under Section 1983 and under Pennsylvania law.  Generally, to

prove a malicious prosecution claim, a plaintiff must show that:  "(1) the defendant initiated a

criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated

the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other

than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty . . . ."

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).[18]  Claims for malicious prosecution are

generally brought against the prosecutors, and not the police officers involved in the incident.

However, a police officer can be liable for malicious prosecution if he or she "fails to disclose

exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits

material information from the reports, or otherwise interferes with the prosecutor's ability to

exercise independent judgment in deciding whether to prosecute."  *Telepo v. Palmer Twp*., 40 F.

Supp. 2d 596, 610 (E.D. Pa. 1999) (internal quotations omitted); *see also Brockington v. City of

Philadelphia*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005); *Strange v. Freeman*, No. 11-7911, 2012

U.S. Dist. LEXIS 161767, at *7 (E.D. Pa. Nov. 13, 2012).

Defendants argue that this claim fails because Officer Burke had probable cause to arrest

Plaintiff.  Defendants are correct.  Because the police officers had probable cause, Plaintiff has

failed to establish an essential element of his claim.  However, even if we determined that

---

[18] The elements of malicious prosecution under Pennsylvania law are similar.  To
establish a claim for malicious prosecution under Pennsylvania law, the plaintiff must prove that:
(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the
plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants
acted maliciously or for a purpose other than bringing the plaintiff to justice.  *Manley v.
Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).

probable cause was lacking, Defendants are nevertheless entitled to summary judgment on the malicious prosecution claim.  Plaintiff has not pointed to any evidence in the record demonstrating that Officer Burke or Sergeant Hennessey acted with malice.  Plaintiff merely alleges in his opposition, without any citation to the record, that "Defendants Burke and Hennessey trumped up false evidence to arrest Plaintiff" and that "a jury could easily find that accusing a disabled man, like Plaintiff of DUI without any probable cause is malicious."  (Pl.'s Resp. 18.)  To survive summary judgment, Plaintiff must rely on more than mere unsupported assertions and conclusory allegations.  *See Schaar*, 732 F. Supp. 2d at 493.  The record reflects that Officer Burke arrested Plaintiff after having witnessed that he had been involved in a car accident, he was stumbling, he was slurring his speech, he fell into his car while getting his paperwork, and he dropped the paperwork on the ground.  Based on these observations, Plaintiff was charged with DUI.  In fact, the DrugScan Report confirmed that Plaintiff's blood alcohol content was well above the legal limit.  Plaintiff has failed to show that the conduct by the police officers was malicious in any way.  Summary judgment is therefore appropriate with regard to Plaintiff's malicious prosecution claim.

### C.      Failure to Train Claim against the City of Philadelphia

The City of Philadelphia moves for summary judgment on the sole claim asserted against it.  Plaintiff claims that the City failed to train and discipline Officer Burke.  The City cannot be held liable for the actions of its employees under Section 1983 based upon respondeat superior.  *Monell v. Dep't. of Soc. Servs*., 436 U.S. 658, 691 (1978).  To maintain a Section 1983 claim against the City of Philadelphia, Plaintiff must show that the alleged constitutional violation— here, that he was falsely arrested for DUI—was a result of a municipal policy, custom, or practice.  *See id.*; *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).  Plaintiff must show that

the City itself, through the implementation of a policy, custom, or practice, caused the constitutional violation. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

The City's failure to adequately train or discipline its police officers can subject it to liability only where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Brown v. Muhlenberg Twp*., 269 F.3d 205, 215 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference can ordinarily be shown where the failure "has caused a pattern of violations." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000); *see also Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). In the absence of such a pattern, the burden on Plaintiff is high. *Berg*, 219 F.3d at 276. Plaintiff must establish that the case at bar falls within the "narrow range of circumstances" in which "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id*. (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). The "failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *City of Canton*, 489 U.S. at 389). In addition, plaintiff must show that the deliberate indifference was the "moving force" behind the violation of Plaintiff's constitutional rights, such that there is a direct link between the municipal policy or custom and the deprivation of constitutional rights. *City of Canton*, 489 U.S. at 389; *Brown*, 520 U.S. at 404.

In support of his failure-to-train claim, Plaintiff points to Officer Burke's prior instances

of misconduct.  In 2010, Officer Burke was accused of assaulting an individual during the course

of an arrest.  (Burke Dep. 71; Officer History, Pl.'s Resp. Ex. H.)  This resulted in an

investigation by the Internal Affairs Division.  Officer Burke was reprimanded as a result of this

incident.  (Burke Dep. 71.)  In 2011, Officer Burke was off-duty and arrested for urinating on a

police vehicle, and refusing to cooperate in the investigation.  (*Id*. at 72; Officer History.)  Also

in 2011, Officer Burke was accused of verbally abusing a prisoner by using a racial slur.  (Burke

Dep. 72; Officer History.)  He was not disciplined as a result of this misconduct.

 These prior instances of misconduct on the part of Officer Burke are not sufficient to

sustain a failure-to-train claim against the City.  The instances of misconduct have nothing to do

with falsely arresting an individual on suspicion of driving under the influence of alcohol.  Nor

does the evidence show a pattern of such violations.  Even if the evidence did show a pattern, the

record is devoid of any evidence regarding the City's training or discipline of its police officers,

and where that training and discipline was inadequate or lacking.  *See Randall v. City of*

*Philadelphia*, No. 13-3864, 2014 U.S. Dist. LEXIS 116429, at *20 (E.D. Pa. Aug. 20, 2014)

(dismissing Section 1983 claim where the plaintiff offered no evidence that the City's "police

officer training, supervision, or discipline was in any way inadequate").  Without offering any

evidence about the City's training protocol, Plaintiff also fails to establish causation—that the

City's lack of training and discipline was the moving force behind his alleged constitutional

injuries.  The evidence is insufficient to support municipal liability.  Summary judgment will be

entered in favor of the City of Philadelphia on Plaintiff's section 1983 claim.

 **D.** **Denial of Medical Treatment**

 Plaintiff also asserts a claim for the denial of medical treatment under the Fourteenth

Amendment against Corizon and Herdman.  As we noted above, Plaintiff has waived all claims

asserted against Herdman by failing to address any arguments Herdman raised in support of summary judgment.  In any event, there is no evidence in the record that shows Herdman having any involvement in the provision of medical care to Plaintiff.  This lack of involvement precludes liability under Section 1983.  *Edgcomb*, 479 F. App'x at 407.  Our analysis will therefore focus on Plaintiff's claim against Corizon.

A private corporation, such as Corizon, may be liable under Section 1983 for actions taken under color of state law that deprive a prisoner of adequate medical care.  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  However, like a municipality, Corizon cannot be held responsible for the acts of its employees under a theory of respondeat superior.  *Monell*, 436 U.S. at 691; *see also Afdahl v. Cancellieri*, 463 F. App'x 104, 109 (3d Cir. 2012).  Instead, to establish liability against Corizon, Plaintiff must demonstrate that he suffered a constitutional violation as a result of a Corizon policy or custom.  *Afdahl*, 463 F. App'x at 109; *see also B.S. v. Somerset Cnty.*, 704 F.3d 250, 275 (3d Cir. 2013) (explaining that it is the plaintiff's burden to show "that a policymaker is responsible either for the policy or, through acquiescence, for the custom").[19]  Plaintiff must also demonstrate "a direct causal link between the municipal action and the deprivation of federal rights."  *Brown*, 520 U.S. at 404.

Plaintiff's *Monell* claim against Corizon fails for many reasons.  Most notably, it is fatal to Plaintiff's claim that he has not presented any evidence about a Corizon policy or custom that relates to his alleged constitutional violation.  *McTernan v. City of York*, 564 F.3d 636, 658 (3d

---

[19] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law," *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480), and "may be established by proof of knowledge and acquiescence," *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

Cir. 2009) (noting that a *Monell* plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was"). Plaintiff merely argues that, despite repeated requests, he was not provided medications. This does not establish a custom or policy. In addition, the evidence of one alleged constitutional violation is not sufficient to establish municipal liability. *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *see also Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011); *Thomas v. Cianfrani*, No. 01-3096, 2009 U.S. Dist. LEXIS 52128, at *10 (E.D. Pa. June 18, 2009) (dismissing *Monell* claims against the city because the plaintiff's allegations were "limited to the events directly relating to himself," which was not sufficient).

Plaintiff has also failed to show that he suffered a constitutional violation, and that this violation was caused by a Corizon policy or custom. "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Plaintiff argues that as a result of Corizon's failure to provide him medications, he "collapsed in the suicide cell and needed emergency treatment and inpatient treatment at ARIA Hospital." (Pl.'s Corizon Resp. 7.) The record is devoid of any evidence, medical or otherwise, that explains Plaintiff's hospital stay. The only evidence that relates to Plaintiff's need for emergency treatment is a one-page ARIA emergency department printout that indicates that Plaintiff arrived at the emergency room on March 2, 2012, with complaints about chest pain. There is no other documentation about

Plaintiff's stay at the hospital, including any diagnoses, prognosis, treatment, or symptoms.[20] Plaintiff received no diagnosis after his 6-day stay at the hospital.  Plaintiff concedes that while he was in the hospital, his vital signs, including blood pressure and temperature, were normal, that all testing results were normal, and that he was discharged without receiving medications. (Marquez Dep. 88-89.)  Simply stated, Plaintiff has failed to present any evidence that he even suffered an injury as a result of being denied medications while in prison custody.[21]

Finally, Plaintiff has failed to identify any individual who has final policymaking authority for Corizon.  To survive summary judgment, Plaintiff must not only identify a policy or custom adopted by Corizon that caused his alleged injuries, but also the Corizon individual with policymaking authority.  *See Santiago v.  Warminster Twp*., 629 F.3d 121, 135 (3d Cir. 2010). Plaintiff's failure to identify any individual at Corizon with such authority results in dismissal of his claim.  *See Bennett v. Prison Health Servs*., No. 11-176, 2015 U.S. Dist. LEXIS 35573, at *18 (E.D. Pa. Mar. 20, 2015) (granting the defendant's motion for summary judgment on his *Monell* claim because the plaintiff failed to identify any individual as the final policymaker for the defendant private health care company employed to provide medical services to the prison).

Accordingly, we will grant Corizon's request for summary judgment on this claim.

---

[20] In addition, Plaintiff has not submitted any medical records that he in fact suffers from low blood pressure and diabetes, and needs the medications he claims were not provided to him. The record contains no documentation indicating that Plaintiff suffered from anything other than chest pains.

[21] Days after being discharged from prison, Plaintiff went to Nazareth hospital where he complained of similar symptoms (chest pain and arm numbness).  (Marquez Dep. 91.)  There he was diagnosed with pneumonia and was prescribed antibiotics.  (*Id*.)  Plaintiff has not alleged, nor has he presented any evidence to support a finding that, his pneumonia resulted from Corizon's failure to provide him with the medications he requested for his high blood pressure, diabetes, pain, and mental illness.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motions for Summary Judgment will be granted. Judgment will be entered against Plaintiff Antonio Marquez, and in favor of Defendants Police Officer Eric Burke, Police Officer Phillip Scratchard, Sergeant Robert Hennessey, Bruce Herdman, the City of Philadelphia and Corizon Health, Inc., t/a Prison Health Services, Inc.

An appropriate Order will follow.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK,   J.**